


**SO ORDERED.**

**SIGNED this 22 day of September, 2008.**

ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

---

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **SHAWN S. JACOBS,** | ) | **Case No. 05-19032** |
| | ) | **Chapter 7** |
| **Debtor.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Before the Court is Debtor's motion to reinstate her discharge.[1] This court revoked Debtor's discharge when it entered default judgment against her on the Trustee's Complaint for Turnover and to Revoke Discharge on February 12, 2007.[2] In that Judgment, the Court entered a money judgment against Debtor in the amount of $2,512.00 and revoked her discharge pursuant to 11 U.S.C. § 727(d)

---

[1] Dkt. 60.

[2] Adv. No. 06-5502, Dkt. 7 and 9.

for not turning over her 2005 income tax refund.[3] Thereafter, the Trustee successfully collected the money judgment by garnishing Debtor's wages. After he filed a notice of newly-discovered assets and the Court set a claims bar date, only one creditor filed a claim. This Court entered a final order of distribution in this case on April 2, 2008 pursuant to which the trustee paid the estate's administrative expenses and the sole filed claim, leaving a surplus of about $600 which was returned to the debtor.

Debtor filed her motion to reinstate on April 24, 2008. The Trustee objected, arguing that the judgment against Debtor for withholding estate property was satisfied only by virtue of post-judgment enforcement activity and not voluntarily, thus the debtor should not be accorded a discharge. The Court heard evidence and received exhibits on July 22, 2008 and is now ready to rule.

**Jurisdiction**

The Court has jurisdiction of this contested matter by virtue of 28 U.S.C. § 157(b)(2)(A) and (J). Venue is proper in the District of Kansas.

**Findings of Fact**

Debtor filed this bankruptcy case *pro se* on October 14, 2005, on the eve of the effective date of the 2005 BAPCPA. Her initial filing contains blank schedules and it appears she never filed any list of creditors other than a matrix of creditors that she annotated with the amounts she thought they were owed. Debtor is a single mother of three children; two of the children live in her home and the third is an adult. In 2005, Debtor was a real estate associate at a local residential realtor's office.

---

[3] Unless otherwise noted, all future statutory references are to title 11 of the United States Code.

Debtor has a bachelors degree in criminal justice and a masters degree in business management. She has a substantial, and probably non-dischargeable student loan obligation arising out of her schooling. Despite her advanced degrees, Debtor has not been able to earn more than $24,000 per year since 2005.

In due course, the Trustee requested that Debtor turn over any income tax refund she might receive. As is customary, the Trustee made that request by letter and, when the letter went unanswered, he filed a motion for turnover. When Debtor did not object, the Court entered a default order directing her to turnover copies of her income tax returns and her 2005 income tax refunds within 10 days of the date of the order. When she did not comply, the Trustee filed a complaint to revoke Debtor's discharge on November 3, 2006. Despite being served, Debtor made no answer or other pleading and, on February 12, 2007, this Court entered judgment by default, directing Debtor to pay $2,512.00, the amount of the refund together with interest at 10 per cent, attorney fees of $500, monetary sanctions of $200, and costs of $250 costs, and revoking her discharge. In the default judgment order, this Court found that Debtor's discharge should be revoked pursuant to § 727(d)(3) because the debtor had acquired property of the estate and failed to surrender or deliver same to the trustee.[4] Debtor did not appeal from this judgment and it is final.

---

[4] The Court notes that the language of the order granting default, drafted by Trustee's counsel, stating that the debtor's discharge was revoked under § 727(d)(3) for failure to "deliver or surrender" property of the estate, misstates the statutory basis for revocation of this discharge. Section 727(d)(2) speaks to revocation of debtor's discharge where the debtor comes into possession of property of the estate and "knowingly and fraudulently" fails to deliver or surrender it. Trustee's complaint in this case did not allege § 727(d)(2), but instead cited § 727(d)(3) thereby alleging that debtor violated the Court's turnover order, a violation of § 727(a)(6) that is incorporated by reference into § 727(d)(3). There was no allegation of fraud in the complaint.

After the Court entered judgment, the Trustee ran garnishments on Debtor's wages and her bank accounts. The Trustee's garnishment against Credit Union of America was returned "no funds," but Debtor's employer, Prudential Dining-Beard answered the Trustee's wage garnishment reporting some $740 being withheld from her wages. Thereafter, inexplicably, Prudential paid the Trustee the total amount of the judgment. The Court notes that this does not appear to be consistent with the employer's duty under the garnishment order or the Court's order to pay in, but also notes that the debtor did not contest the garnishment answer as she was entitled to do under Kan. Stat. Ann. § 60-735 as it is made applicable by Fed. R. Bankr. P. 7069. Debtor testified that she did not contest the garnishment proceedings because she thought her domestic court lawyer was doing so. Prudential paid the Trustee $3,705.55 on or about July 16, 2007. On April 24, 2008, debtor filed her motion to reinstate.

The debtor's matrix suggests that she had approximately $6,000 to $7,000 in credit card debt at filing, along with a loan of $8,000 and a student loan of about $60,000. She testified that she owed some $15,786 in addition to her student loan. After filing, debtor bought a used Lexus from Scholfield Brothers for approximately $6,300. Debtor subsequently defaulted on her obligations to Scholfield who obtained judgment against her for about $7,200 including interest, attorneys fees and costs. This debt would not be covered by the discharge entered in the 2005 case, were it to be reinstated. Thus, as it stands now in the absence of her discharge, Debtor owes between $6,000 and $22,986 in unsecured debt plus her student loan.

In her testimony, debtor was apologetic, but not entirely remorseful about her use of the estate's money. She repeatedly stated that the money was hers, that she needed it, and that she used it out of necessity. The Court has heard this many times from debtors who fail to turn over their tax

refunds.

**Discussion**

Debtor cited no statutory authority for her motion to reinstate in the motion itself. At the evidentiary hearing, debtor's counsel urged the Court to grant relief under Fed. R. Civ. P. 60(b)(5). The Court construes Debtor's motion as one for relief from judgment under Fed. R. Bankr. P. 9024 which incorporates Fed. R. Civ. P. 60(b) into bankruptcy practice. Debtor proceeds under Rule 60(b)(5) which authorizes relief from a final judgment when (1) "the judgment has been satisfied, released, or discharged," or (2) "a prior judgment upon which it is based has been reversed or otherwise vacated," or (3) "it is no longer equitable that the judgment should have prospective application." In proceedings under Rule 60(b), the movant has the burden to go forward.[5] Debtor argues the first and third clauses apply to her case.

***Timeliness of Rule 60(b)(5) Motion***

Before addressing the merits of granting debtor relief under Rule 60(b)(5), the Court first considers the timeliness of debtor's motion to reinstate. Motions for relief based upon subsection (b)(5) must be made in "a reasonable time."[6] What constitutes a reasonable time depends on the facts of each case.[7] Here, the money judgment and order of revocation was entered February 12, 2007 and became final when debtor failed to appeal the same. The money portion of the judgment

---

[5] *Satterlee v. Allen Press, Inc.,* 455 F.Supp.2d 1236, 1242 (D.Kan. 2006).

[6] Fed. R. Bankr. P. 60(c)(1).

[7] *See Sorbo v. United Parcel Serv.,* 432 F.3d 1169 (10th Cir. 2005) (no abuse of discretion in ruling that one year between judgment and Rule 60(b) motion was not a reasonable time); *Sprint Spectrum, L.P. v. Genesis PCS Corp.,* 236 F.R.D. 530, 532-33 (D. Kan. 2006) (A court should consider the following factors: interest in finality, reason for delay, practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.).

was satisfied on or about July 16, 2007 when Prudential paid the trustee on the garnishment. This would have been the first moment that relief on the basis of subsection (b)(5) was apparent and available.[8] The motion to reinstate was filed on April 24, 2008, some nine months later. Debtor proffered no explanation why she waited this long to file her motion.[9] Her unexplained delay in filing the motion is symptomatic of her behavior throughout these proceedings. The Court concludes that debtor's motion to reinstate was not filed within a reasonable time from the entry of the revocation judgment but will nonetheless evaluate her requested relief on the merits.

***Merits of Rule 60(b)(5) Relief***

Debtor contends the judgment against her has been satisfied, but the Trustee argues that while the monetary portion of the judgment may have been paid, the injunctive portion of the judgment (*i.e.*, revocation of Debtor's discharge) can never be satisfied. The Court agrees.

Cases that interpret the "satisfied, released or discharged" language are few and far between. One treatise suggests that "[a] motion for relief from a judgment under this provision of Rule 60(b)(5) is a fairly straightforward proposition."[10] Another treatise states that "[t]he first of the grounds set out in Rule 60(b)(5), that the judgment has been satisfied, released, or discharged, has been relied on very rarely."[11] Most of the cases where relief was granted based on satisfaction of

---

[8] *Sorbo, supra* at 1178 (A party who delays in filing a Rule 60(b) motion after discovery of the grounds for the motion must present sufficient justification for the delay.).

[9] The Court observes that debtor waited until after the order of final distribution on April 2, 2008, pursuant to which $600 was refunded to her. Dkt. 56.

[10] 12 Joseph T. McLaughlin, *Moore's Federal Practice - Civil* § 60.45 (2008).

[11] 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, Civil 2d §2863, 333 (2d ed. 1995).

the judgment involved monetary judgments or conditional injunctions.[12] This makes sense since it is usually fairly easy to discern whether payment or a certain condition has been met. The judgment revoking this debtor's discharge was unconditional. As a practical matter, a judgment revoking a debtor's discharge can never be satisfied. Therefore, the first clause of Rule 60(b)(5) is of no avail here.

Debtor also argues that it would be inequitable not to reinstate her discharge now that the estate has been made whole. This implicates the third clause of Rule 60(b)(5). That clause applies to final judgments that have prospective application. Relief under this clause requires a strong showing that a change in the enjoined party's condition would make continued enforcement of the injunction inequitable.[13] The revocation judgment, however, does not have the kind of prospective effect to which the rule speaks.

In some way, nearly all judgments have prospective effect because they change the prospective positions of the parties going forward. The standard to apply in determining whether an order or judgment has "prospective application" within the meaning of Rule 60(b)(5) is whether it is "executory" or involves "the supervision of changing conduct or conditions."[14] When a discharge is entered, it enjoins all pre-petition creditors of the debtor from taking any action to collect those debts. A creditor who persists in collection efforts is susceptible to citation in contempt

---

[12] *See Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d 1047 (D.C. Cir. 1971)(Co-defendant's motion to reduce judgment liability by amount paid per settlement agreement between plaintiff and another defendant); other cases listed at 11 Wright, Miller & Kane, *supra* note 5, fn. 6 and 7.

[13] *Id.* at 337 and 341.

[14] *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988). *See also United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) and *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 15 L.Ed. 435 (1856).

before the bankruptcy court. Thus, a discharge is clearly injunctive in nature. The revocation of a previously-entered discharge under § 727(d) relieves the creditors from its injunctive effect. Revoking a debtor's discharge does not compel a debtor to perform or not to perform any future act. Nor does it require the court to supervise any continuing interaction between Debtor and the other parties to the case. Instead, it definitively relieves the creditors from the injunctive effect of her discharge. Therefore, the Court concludes that a judgment for revocation of discharge does not have prospective application for the purposes of Rule 60(b)(5). For the same reasons, a judgment for money damages does not have prospective application.[15] Thus, the third clause of Rule 60(b)(5) is not applicable here.

***Merits of Rule 60(b)(6) Relief***

The debtor may not rely on the catch-all clause of Rule 60(b)(6) which grants relief from a judgment for "any other reason justifying relief." This subsection cannot be invoked when the judgment debtor seeks relief under one of the other grounds enumerated in Rule 60(b).[16] Even if Debtor could rely on Rule 60(b)(6), the record does not demonstrate the existence of extraordinary circumstances warranting relief.[17] The case law interpreting this rule is substantial. Rule 60(b)(6) has been described as a "grand reservoir of equitable power to do justice in a particular case."[18] In

---

[15] *See* 11 Wright & Miller, supra note 5, fn 14 at 338-339 (citing *Marshall v. Board of Educ., Bergenfield, New Jersey*, 575 F.2d 417 (3rd Cir. 1978) and *Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2nd Cir. 1962)).

[16] *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1174 (10th Cir. 2000). *See also Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5th Cir. 1990).

[17] Relief under Rule 60(b)(6) will be granted only if extraordinary circumstances are present. *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

[18] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir.1996) (citation omitted).

general, relief under this subsection is more difficult to attain and is appropriate only when it offends justice to deny such relief.[19] It should not be used to relieve a party from free, calculated, and deliberate choices; a party is under a duty to take legal steps to protect his own interests.[20]

While Debtor makes a persuasive case that her conditions are grim, there is nothing extraordinary about her story, nor are any of the circumstances she relies on "changed" circumstances that arose after this Court's previous order. It is indeed true that the Trustee has collected from the debtor what she owed, but only via the legal process and without any cooperation of the debtor whatsoever. The debts she will retain are exactly the debts she had when the 2005 case was filed. Her reliance on her divorce attorney to respond to the Trustee's demands and her distraction with her daughter's troubled pregnancy are also matters that arose before this Court's judgment and cannot be said to be changed circumstances. This Court does not doubt that the debtor has endured some misfortune, as most debtors do, but none of these circumstances were brought to the Court's attention before this final, unconditional, and unappealed revocation order was entered. It is apparent to this Court that debtor chose to ignore the trustee and these proceedings to obtain the tax refund from her. She had multiple opportunities to address the matter along the way. Debtor attempted no contact with the trustee until the trustee began proceedings to enforce the judgment. This is simply too little, too late.

Neither has Debtor proven she is suffering from oppressive hardship. Debtor contends she can barely make ends meet now and denial of her motion to reinstate her discharge would add

---

[19] *Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir. 1999).

[20] *Cashner, supra* at 580; *Ackermann,* 340 U.S. at 198 (denying Rule 60(b)(6) relief from judgment cancelling Ackermann's naturalization).

approximately between $6,000 and $22,000 to her debt load which would be an extreme hardship. The Court notes that even if her discharge were reinstated, she would still be on the hook to a student loan lender for nearly $60,000 and to Scholfield for $7,200. The Court assumes the debtor may have incurred other credit as well. Debtor will be ineligible for chapter 7 relief until 2014. Whether or not the Court reinstates Debtor's discharge, her financial outlook is bleak.

This Court is most troubled by the debtor's attitude and approach to her duties to the Court and the Trustee as a voluntary debtor in bankruptcy. At no time did she respond to the Court's notices or orders. She did not even complete her schedules. Only now, after the Trustee has put considerable effort into collecting his money judgment, does she seek to reclaim her discharge. In short, this Court cannot find that it offends justice to deny her this relief, no matter how sympathetic her financial plight may seem. The conduct that led to her loss of her discharge simply cannot be condoned and the Court declines to exercise its equitable power to reinstate her discharge in this case.

Finally, while a discharge is the legitimate objective of every honest debtor who complies with the Code and Rules and whose conduct accords with § 727, it cannot be said to be a *quid pro quo*. As the Tenth Circuit Bankruptcy Appellate Panel has said:

> Restricting the issuance of discharges to honest debtors is important to the legitimacy and integrity of the bankruptcy process. Similarly, the legitimacy and integrity of the process requires that the § 727 discharge, a right created by Congress and adjudicated and granted by the federal courts, not be treated as a commodity. Accordingly, the discharge "is not a proper subject for negotiation and the exchange of a *quid pro quo*" between a debtor and creditors.[21]

To reinstate Debtor's discharge here when she has only paid her due to the estate on pain of legal

---

[21] *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 758-759 (10th Cir. B.A.P. 2003)(citations omitted).

process comes close to the disfavored "negotiation and exchange of a discharge." It also sends the wrong message to other debtors–that they may flaunt turnover rules and orders and then buy their way out of trouble.

While it is difficult not to sympathize with the debtor's financial circumstances, the Court is bound to follow the law and rules in this case. There is simply no showing to warrant this Court's relieving this debtor of the effect of the revocation order. This Court recognizes that its ruling today leaves Debtor with no means of discharging the obligations she had prior to the filing of this case. At the same time, this Court also recognizes that the vast majority of debtors, counseled or not, comply with the law, the Rules, and court orders. Had Debtor simply communicated with the Trustee during the administration of the case, some other solution might well have been reached. But in the face of the debtor's abject refusal to obey its orders, this Court has no alternative but to deny her motion to reinstate.

**Conclusion**

Debtor's motion from relief from the order revoking her discharge under Rule 60(b)(5) or (b)(6) and to reinstate her discharge must be DENIED on both timeliness grounds and on the merits.

# # #